UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

JOE HAND PROMOTIONS, INC., *as Broadcast Licensee of the December 27, 2008, UFC # 92 Program,*

Plaintiff,

v.                    409CV100

CARL R. BLANCHARD, *Individually, and as officer, director, shareholder and/or principal of* PARMAX INC., d/b/a HIDE-A-WAY SPORTS GRILL, a/k/a THE HIDE-A-WAY SPORTS TAVERN, a/k/a HIDE-A-WAY SPORTS TAVERN, and PARMAX INC., d/b/a HIDE-A-WAY SPORTS GRILL, a/k/a THE HIDE-A-WAY SPORTS TAVERN, a/k/a HIDE-A-WAY SPORTS TAVERN,

Defendants.

## ORDER

### I. INTRODUCTION

Plaintiff Joe Hand Promotions, Inc. ("Joe Hand") filed this suit against Defendants Carl R. Blanchard, individually and doing business as Parmax Inc. ("Blanchard"), and Parmax, Inc., doing business as Hide-A-Way Sports Grill ("the Hide-A-Way") (collectively, "Defendants"), for violating the Communications Act of 1934, 47 U.S.C. §§ 553 & 605. Doc. # 1. Despite being served with the summons and a copy of the Complaint, doc. ## 11, 12, neither defendant filed a responsive pleading. Joe Hand then filed a motion for entry of default, doc. # 13, which was entered by the Clerk on 8/13/09. Doc. # 14. Joe Hand now moves, unopposed, for a default judgment against both defendants. Doc. # 15.

### II. BACKGROUND

According to the facts alleged in the Complaint, Joe Hand was granted the right to distribute the UFC # 92 program (the "Program"), which was broadcasted on 12/27/08 via both closed circuit television and encrypted satellite signal. Doc. # 1 at 4.[1] Joe Hand, in turn, entered into agreements with various entities in Georgia, whereby those entities were allowed to publicly exhibit the Program to their patrons. *Id.*

In an attempt to combat piracy of its broadcast, Joe Hand hired an investigative agency, which retained auditors to visit various bars and restaurants on the night the Program aired, to see whether the establishments were intercepting and publicly displaying the Program without authorization from Joe Hand. Doc. # 15-3 at 3. One auditor visited the Hide-A-Way and witnessed the Program being broadcasted on six television sets. *Id.* According to the auditor's affidavit, the Hide-A-Way did not charge an admittance fee to view the Program. Doc. # 15-1 at 26. The auditor was unable to see the posted maximum occupancy for the bar, but he noted that some 75 patrons were in the bar at one point during the Program. *Id.* at 26-27. According to the auditor, there were no advertisements posted announcing the Hide-A-Way's broadcast of the Program. *Id.* While on the premises, the auditor took several photographs of a satellite dish mounted to the bar's exterior. *Id.* at 29, 31-32.

---

[1] To put it more technically, the Program originated via satellite uplink and was subsequently re-transmitted to cable systems and satellite companies via satellite signal. Doc. # 1 at 4.

Joe Hand contends that it had not authorized the Hide-A-Way to broadcast the Program, that its programs cannot be mistakenly or innocently intercepted, doc. # 15-3 at 11, and that the Hide-A-Way's broadcast of the Program therefore constituted a knowing and willful violation of the Communications Act of 1934, as amended, 47 U.S.C. § 605. Doc. # 1 at 4-5. That is, Joe Hand alleges that Defendants unlawfully intercepted, received, and exhibited the Program within their establishment for commercial advantage or financial gain. *Id.*

As referenced above, neither defendant has answered or otherwise acknowledged this suit, despite the fact that service was executed upon each of them on 6/25/09. Doc. ## 11, 12. Joe Hand's motion for entry of default, doc. # 13, was granted by the Clerk on 8/13/09. Doc. # 14. Plaintiff filed this motion for default judgment on 10/08/09, doc. # 15, seeking the maximum amount of statutory damages under 47 U.S.C. § 605, plus attorney's fees and costs.

## III. ANALYSIS

### A. Requirements for Default Judgment

The mere entry of default by the Clerk does not in itself warrant the entry of default judgment by the Court. *See Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).[2] The Court, in its discretion, must find that there is a "sufficient basis in the pleadings for the judgment to be entered." *Id.* The entry of default causes all well-pleaded allegations of fact to be deemed admitted. *See Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987). The Court thus must accept these facts as true and determine whether they state a claim upon which relief may be granted. *See Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370, n.41 (11th Cir. 1987). However, since the entry of default does not constitute an admission of conclusions of law, the Court is still charged with determining whether the unchallenged facts actually constitute a legitimate cause of action. In considering any default judgment, the Court must examine (1) jurisdiction, (2) liability, and (3) damages. *See Pitts v. Seneca Sports, Inc.*, 321 F. Supp. 2d 1353 (S.D. Ga. 2004). This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction). The remaining considerations, liability and damages, are discussed below.

### B. 47 U.S.C. § 605

Because Joe Hand transmitted the Program to both cable and satellite systems, and it was unable to discern which way (i.e., using an illegal satellite receiver or using one of several cable piracy techniques) the Hide-A-Way intercepted the Program, Joe Hand originally alleged claims under both 47 U.S.C. § 605, for interceptions via satellite transmissions, and 47 U.S.C. § 553, for interceptions by way of cable systems. Doc. # 1 at 4-6. In its default judgment motion, Joe Hand explains that, in light of Defendants' refusal to participate in the lawsuit and related discovery, it has been unable to determine which particular method the Hide-A-Way employed in order to intercept the Program. Doc. # 15-3 at 7. Although the facts established by the default suffice to show liability under either § 553 or § 605, Plaintiff may only recover under one of those sections. *Joe Hand Promotions, Inc. v. McBroom*, 2009 WL 5031580, at *2 (M.D. Ga. 2009); *J & J Sports Prods., Inc. v. Fitzgerald*, 2009 WL 3681834, at *2 n.1 (N.D. Ga. 10/30/09). "In this circumstance, the Court elects to 'giv[e]

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit decided prior to October 1, 1981.

Plaintiff the benefit of the doubt'" and not fault it "'for failing to plead the particular manner of interception since this may be exclusively in Defendants' knowledge.'" *McBroom*, 2009 WL 5031580, at *3 (quoting *J & J Sports Prods., Inc. v. Gallegos*, 2008 WL 3193157, at *7-8 (D.N.J. 8/5/08)). Joe Hand has elected to seek damages pursuant to § 605, for interceptions via satellite transmissions. Thus, the Court will examine Blanchard and the Hide-A-Way's liability and damages that section.

### 1. Liability under § 605

Section 605 prohibits any unauthorized person from "receiv[ing] or assist[ing] in receiving any interstate or foreign communication by radio and us[ing] such communication ... for his own benefit ...." 47 U.S.C. § 605(a). Although § 605(a) explicitly refers only to "radio" communications, it has also been construed to encompass satellite TV transmissions. *See DirecTV, Inc. v. Brown*, 371 F.3d 814, 817 (11th Cir. 2004); *DirecTV, Inc. v. Schulien*, 401 F. Supp. 2d 906, 912-13 (N.D. Ill. 2005) ("The law is clear that digital satellite transmissions are covered by section 605."). Section 605 explicitly provides a private right of action to "any person aggrieved by any violation of [47 U.S.C. § 605(a)]." *Id.* § 605(e)(3)(A). In this case, Joe Hand's possession of proprietary rights to the Program, which was an unlawfully intercepted communication, satisfies that requirement.

The auditor provided ample evidence that the Hide-A-Way had a satellite receiver mounted to its exterior, doc. # 15-1 at 29, 31-32. Additionally, Joe Hand subpoenaed records from DirecTV satellite company, which indicated that the Hide-A-Way did have an account and satellite access on the premises. Doc. # 15-3 at 16-58. As Joe Hand sufficiently alleged – and, indeed, provided evidence in corroboration – that the Hide-A-Way unlawfully obtained and exhibited the Program, Joe Hand has established that the Hide-A-Way violated § 605.

To hold Defendant Blanchard vicariously liable in his individual capacity and as officer, director, shareholder and/or principal of the Hide-A-Way under § 605, Joe Hand must show that Blanchard had a "right and ability to supervise the violations, and that he had a strong financial interest in such activities." *J & J Sports Prods., Inc. v. Arboleda*, 2009 WL 3490859, at *5 (M.D. Fla. 10/27/09). By virtue of the default, Blanchard has admitted that he had supervisory control over the Hide-A-Way's decision to show the Program and that he received financial benefit from it. *See id.* Thus, Joe Hand is entitled to joint and several liability[3] for damages against Blanchard in an individual and corporate capacity.

For the foregoing reasons, the Court **GRANTS** Plaintiff Joe Hand's motion for default judgment against the Hide-A-Way and Blanchard. Doc. # 15. The Court now turns to the issue of damages.

### 2. Damages under § 605

Pursuant to § 605(a), a plaintiff may elect between actual or statutory damages. *See* 47 U.S.C. § 605(e)(3)(C)(i); *McBroom*, 2009 WL 5031580, at *3. Here, Joe Hand has elected to receive statutory damages and moves the Court to award an amount up to

---

[3] "It appears that joint and several liability is available for violations of the Communications Act." *Kingvision Pay-Per-View Corp., Ltd. v. El Torito Supermarket, Inc.*, 2007 WL 1794158, at *3 (M.D. Fla. 6/19/07); *see Cable/Home Comm. Corp. v. Network Prod., Inc.*, 902 F.2d 829, 852 (11th Cir. 1990) (declining to disturb award of joint and several damages between corporate and individual defendants).

3

$110,000,[4] plus reasonable attorney's fees and costs. Doc. # 15. In light of the fact that the requested damages are statutory in nature and also the fact that the Court has before it an adequate record to guide its decision and calculations, the Court declines to exercise its discretion to hold a hearing on the damages issue.

Under § 605, Joe Hand may be awarded statutory damages and reasonable attorney's fees and costs. If Joe Hand can also show that Defendants' violation was willful, Joe Hand may also be awarded enhanced damages under the statute.

### a. Statutory Damages

Under §605(e)(3)(C)(i)(II), a court can award between $1,000 and $10,000 per violation. Joe Hand seeks the maximum amount. Doc. # 15-3 at 12.

Courts have wide discretion in determining the appropriate amount of statutory damages. *See Cable/Home Comm. Corp.*, 902 F.2d at 852. Although the Eleventh Circuit has not set forth the appropriate formula for assessing § 605 damages, most of the district courts facing this task have employed one of two methods. Some courts have simply awarded a flat amount. *See, e.g., J & J Sports Prods., Inc. v. Papiana*, 2010 WL 1191807 (W.D. La. 3/26/10) (awarding the statutory maximum, $10,000, without setting forth any considerations or mathematical formula); *King Vision Pay Per-View, Ltd. v. Lavorico*, 2010 WL 796929, at *4-5 (E.D. Cal. 3/6/10) (awarding $1,000 in statutory damages); *Cablevision Sys. Corp. v. Maxie's N. Shore Deli Corp.*, 1991 WL 58350, at *2 (E.D.N.Y. 3/20/91) (awarding flat damage amount "based on the Court's view of the equities and not the estimate of the number of patrons"). Some other courts have based the award on the number of patrons who were actually in the bar during the program. *See, e.g., Garden City Boxing Club v. Rosado*, 2005 WL 3018704, at *3-4 (E.D.N.Y. 10/6/05) (multiplying the number of patrons present for the unauthorized broadcasting by the $54.95 residential charge for the pay-per-view event shown). Still other courts – particularly those within the Eleventh Circuit – have ordered defendants to pay, as statutory damages, the amount of the license fee that they would have been charged if they had actually been authorized to show the program. *See, e.g., McBroom*, 2009 WL 5031580, at *4 (Middle District of Georgia); *Arboleda*, 2009 WL 3490859, at *6 (Middle District of Florida); *see also J & J Sports Prod., Inc. v. Sin Fronteras Rest.*, 2010 WL 1565441, at *7 (E.D.N.Y. 2/23/10) (awarding amount establishment would have been charged based on its occupancy).

Joe Hand has provided the Court with a copy of the rate card for the Program, showing that establishments were charged between $750 and $1,500, depending on the occupancy of the establishment. Doc. # 15-3 at 60 ($750 for occupancy of 1-50; $875. for 50-100; $975 for 100-150; $1,100 for 150-200; $1,300 for 200-250; and $1,500 for 250-300). Unfortunately, however, Plaintiff has not alleged or otherwise indicated the Hide-A-Way's maximum occupancy in order to assist the Court in assessing the proper damages. *See Kingvision Pay-Per-View Ltd. v. Rodriguez*, 2003 WL 548891, at *2 (S.D.N.Y. 2/25/03) (awarding statutory minimum where plaintiff failed to offer evidence of the cost of the license fee for defendants to broadcast the boxing event legally). In the absence of evidence

---

[4] Plaintiff makes clear that it is urging the Court to award the $10,000 maximum award under § 605(e)(3)(C)(i)(II), but is leaving to the Court's discretion the amount to award under § 605(e)(3)(C)(ii), which allows for an enhanced damage award of up to $100,000. Doc. # 15-3 at 12.

4

showing that the licensing fee would have been higher, the Court awards the statutory minimum amount of $1,000 (which, the Court notes, is higher than the licensing fee that Joe Hand assigned to establishments with occupancies of up to 150 people). The Court now turns to the issue of enhanced damages.

### b. Enhanced Damages

Joe Hand, however, may be entitled to more than the $1,000 statutory award. Under the statute, enhanced damages may also be awarded when the violation was "committed willfully and for purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(C)(ii). "Courts have found that willfulness under section 605 is 'established by the fact that an event is broadcast without authorization.'" *McBroom*, 2009 WL 5031580, at *5 (citing *Joe Hand Prods., Inc. v. Leon*, 2007 WL 4097412, at *2 (N.D. Ga. 10/31/07)); *see also J & J Sports Prods., Inc. v. Kosoria*, 2007 WL 1599168, at *3 (S.D.N.Y. 6/1/07) (noting that an encrypted satellite program "cannot be intercepted without engaging in a willful act"); *Entm't by J & J, Inc. v. Al-Waha Enterps., Inc.*, 219 F. Supp. 2d 769, 776 (S.D. Tex. 2002) (noting "the low probability that a commercial establishment could intercept [a pay-per-view event] broadcast merely by chance," so that in these types of cases such an interception should be found willful and for the purposes of commercial advantage).

Thus, the Court finds that Defendants willfully violated § 605, as there is no evidence indicating that the Program could have been accidentally intercepted and unscrambled. Moreover, the Hide-A-Way surely reaped some commercial benefits, as the broadcast likely led to increased patronage and thus increased drink sales. Additionally, upon the Clerk's entry of default, Defendants were deemed to have admitted the allegations that they exhibited the Program willfully and for commercial gain. As a result, enhanced damages are warranted under § 605.

In determining the amount of enhanced damages, "courts consider several factors: (1) the number of violations; (2) defendant's unlawful monetary gains; (3) plaintiff's significant actual damages; (4) whether defendant advertised for the event; and (5) whether defendant collected a cover charge." *McBroom*, 2009 WL 5031580, at *5 (quote and cite omitted). Courts also consider the deterrent effect of the award, keeping in mind that the award should be "substantial enough to discourage future lawless conduct, but not so severe that it seriously impairs the viability of the defendant's business (at least for a first offense)." *Id.* (quote and cite omitted). Many courts – particularly those within the Eleventh Circuit – calculate their enhancement awards as a multiple of the corresponding statutory award. The formula of three times the statutory award is common in cases such as this one, where the establishment is a first-offender, did not charge for entry, did not charge a premium on drinks or food during the broadcast, and did not advertise the broadcast. *See id.* at *5-6; *Arboleda*, 2009 WL 3490859, at *7.

The Court is persuaded by this methodology and will award enhanced damages in the amount of three times the statutory award of $1,000, which is $3,000. Thus, Joe Hand is awarded total damages in the amount of $4,000.

### 3. Attorney's Fees and Costs

Pursuant to 47 U.S.C. § 605(e)(3)(B)(iii), a district court "shall direct the recovery of full costs, including awarding reasonable attorney's fees to an aggrieved party who prevails." Joe Hand has moved for the recovery of fees and

5

costs. The Court must determine whether they are reasonable under the statute.

Joe Hand seeks attorney's fees in the amount of $1,066.75 for both attorney and paralegal time, and costs of $550 (comprised of $350 in filing fees and $200 for service of process). Doc. # 15-2 at 2. Plaintiff's counsel has submitted an affidavit, enumerating how her 4.37 hours and her paralegal's 2.57 hours were expended. *Id.* at 1-4. The Court has reviewed this affidavit and is satisfied with the explanation of time expenditures and the corresponding hourly rates. As a result, the Court *GRANTS* Joe Hand's motion for attorney's fees and costs.

## IV. CONCLUSION

For the foregoing reasons, the Court *GRANTS* Plaintiff Joe Hand Productions' motion for default judgment against Defendants Carl R. Blanchard and Parmax, Inc. Doc. # 15. As a result, Defendants are jointly and severally liable for statutory damages in the amount of $1,000 and enhanced damages in the amount of $3,000, for a total damages award of **$4,000**. Additionally, Defendants are jointly and severally liable for Plaintiff's attorney's fees and costs, which total **$ 1,616.75**. Thus, the total amount due to the Plaintiff is **$5,616.75**.

This day of 3 May 2010.

/s/ B. Avant Edenfield
B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA